PRINCE JOHNSON v. VERNON ALEXANDER WILLIAMS AND JAMES REID DOUGLAS

No. 7311DC269

(Filed 8 August 1973)

Automobiles § 62; Negligence § 29— striking of pedestrian — insufficient evidence of negligence

In order for plaintiff to be entitled to go to the jury on the issue of negligence he must introduce evidence either direct or circumstantial, or a combination of both, sufficient to support a finding that defendant was guilty of the act of negligence complained of and that such act proximately caused plaintiff's injury, including the element that the injury was reasonably forseeable under the circumstances; hence, the trial court properly directed verdict for defendant driver where plaintiff pedestrian did not indicate by diagram or otherwise the relative positions of the parties at the accident scene nor by testimony establish the duties of each party to the other.

APPEAL by plaintiff from *Lyon, District Judge,* 6 November 1972 Session of District Court held in LEE County.

Plaintiff instituted this action to recover damages for personal injury inflicted upon him as a pedestrian by the alleged negligence of defendant Williams in the operation of an automobile owned by defendant Douglas.

Plaintiff's evidence tended to show that at about 1:00 a.m. on 12 May 1968 plaintiff was struck by defendant's automobile and suffered personal injury. Plaintiff's testimony is the only evidence of how the accident occurred. The total of his testimony relating to how the accident occurred is as follows:

"I was struck by an automobile that night at Rock Street, now they call it Fields Drive. I was crossing Rock Street, coming off Washington when I was struck. I was going on Hudson. Hudson is another street near Rock Street. I had been on the side of Rock Street that is towards

town. Hudson Street is the next street off Washington. It comes in on the railroad side of the highway. I don't know the name of the street. As I crossed Fields Drive the railroad was to my left. I did not see any traffic or vehicles about Fields Drive when I got there, there was no car coming neither way. When I say 'neither way' I mean there wasn't no car on Rock Street. There was a car coming down Washington Avenue. I mean that it was coming meeting me. It was across Rock Street, coming from Washington. I don't know exactly how far it was from Rock Street when I first saw it, but when I crossed on Rock Street, he turned right on Rock Street and hit me. I don't know what happened when he hit me. I don't know exactly how far I was on Rock Street when this happened to me. I was in the Street because I was crossing it. I do not read and write. I can make out that diagram—the streets, I would call Rock Street going North. The car that struck me was coming down Washington when I first saw it, and I was crossing and he just turned right in, he didn't stop. I don't recall what part of the car hit me. I was trying to get out of the way of the car that turned there. I did not run out in the street in front of any car, he turned in on me.

"The next thing I remember I was trying to get out of the way and after that he just hit me and that is all I know. I don't remember anything else happening."

\*     \*     \*

"That night I saw and talked to Mr. Judd at his residence, ate supper with him. When I left his residence, I was going to get my brother to carry me home. He lives on Hudson Avenue. Hudson is down next to the railroad. I never did get across Rock Street. I didn't get to my brother's house that night, I got hit before I crossed Rock Street, I got hit on Rock Street. Coming from the cafe, I had been walking on Washington Street on the left-hand side, I mean the shoulder of the road there. That is where people walk up and down that street. There is not a path or a walkway there. I have seen other people walking there. I have seen other people walking on that side of Washington Avenue on both sides of Fields Drive. There is not a sidewalk in that neighborhood."

---

Johnson v. Williams

---

\*   \*   \*

"There is an open field between Washington Avenue and this warehouse down there. There is a path across there. When I was coming off Washington Ave. I was coming to this path if I had got to it. I don't think this path on the south side of Fields Drive or Rock Street starts at a point about 50 or 60 feet from Washington Avenue and goes across to the back of the warehouse. It goes back to the warehouse but it don't start no 50 feet down the street. It starts probably ten feet from Washington Avenue. My brother lives on Hudson Avenue."

\*   \*   \*

"On the night of May 11, 1968 or the morning of May 12, 1968, I said I was coming down Washington Ave., I was going from the North on Washington Ave., crossing Rock Street, I was going straight across."

At the close of plaintiff's evidence defendant's motion for a directed verdict was allowed. Plaintiff appealed.

*Hoyle & Hoyle, by J. W. Hoyle, for the plaintiff.*

*Pittman, Staton & Betts, by R. Michael Jones, for the defendants.*

BROCK, Judge.

In order for plaintiff to be entitled to go to the jury on the issue of negligence he must introduce evidence either direct or circumstantial, or a combination of both, sufficient to support a finding that defendant was guilty of the act of negligence complained of and that such act proximately caused plaintiff's injury, including the element that the injury was reasonably foreseeable under the circumstances. 5 Strong, N. C. Index 2d, Negligence § 29, p. 60.

Negligence is not presumed from the mere fact of an accident or injury, except in the narrow class of cases to which the doctrine of *res ipsa loquitur* is applicable.

Plaintiff is required to establish by his evidence, beyond mere speculation or conjecture, every essential element of negligence, and upon his failure to do so a directed verdict for the defendant is proper. *Coakley v. Motor Co.,* 11 N.C. App. 636, 182 S.E. 2d 260.

Plaintiff's evidence of how the accident occurred presents, at most, an opportunity for speculation and conjecture. There is no chart or diagram depicting the relative positions of the parties, and their relative positions and duties are not established by the testimony. In our opinion a directed verdict for the defendant was proper.

Affirmed.

Judges MORRIS and PARKER concur.